## UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF GEORGIA
## AUGUSTA DIVISION

| | |
|---|---|
| ASHLEY MILLER, individually and on behalf of all others similarly situated,    * <br> * <br> * <br>         Plaintiff,    * <br> * <br> vs.    * <br> * <br> TOTAL LIFE CHANGES, LLC    * <br> * <br> * <br>         Defendant.    * <br> * | Civil Action No. |

## CLASS ACTION COMPLAINT AND
## DEMAND FOR TRIAL BY JURY

Plaintiff Ashley Miller ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her undersigned counsel, brings this action for damages and other legal and equitable relief against Defendant Total Life Changes, LLC ("Defendant"). Plaintiff states the following for her claims against Defendant:

## INTRODUCTION

1.     Plaintiff files this class action on behalf of herself and members of the proposed Class (as defined below) who were misled into purchasing Defendant's Raspberry Lemonade Flavor Iaso Tea Instant product ("Tea") due to Defendant's false and misleading advertising as described herein.

2.     Defendant represented through product packaging, product literature, Defendant's retail website, third-party retail websites, and statements by Defendant's representatives, that its Tea does not contain Tetrahydrocannabinol ("THC") when, in fact, it does.

3.      THC is "the primary psychoactive component in marijuana, hashish, and other preparations derived from cannabis plants."[1]

4.      In addition to the purportedly THC-free Raspberry Lemonade Tea, Defendant sells flavors of its Iaso tea that are not marketed as THC-free.

5.      Plaintiff and Class Members would not have purchased the Raspberry Lemonade Tea that was marketed as THC-free had they known that the representations made by Defendant regarding the existence of THC in the product were false, deceptive and/or misleading.

6.      Plaintiff saw, read, and relied on Defendant's representations regarding the Raspberry Lemonade Instant Tea's THC levels, and ultimately decided to purchase the Tea.

7.      Indeed, Plaintiff confirmed with Defendant's business representative that the Tea, unlike other TLC products, was THC-free and would not cause a failed drug test.

8.      After purchasing and consuming the Tea, Plaintiff tested positive for THC during a random drug test at work and had tangible benefits of her employment suspended pending investigation.

9.      Defendant's representations that the Tea does not contain THC are false.

10.      Defendant has not issued a recall or otherwise notified consumers of its misrepresentations. As such, consumers will continue to be harmed by Defendant's misrepresentations without injunctive relief.

11.      Plaintiff brings this action to remedy Defendant's unlawful practices.

---

[1] *THC*, Dictionary.com, https://www.dictionary.com/browse/thc (last visited on October 23, 2020).

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over Plaintiff's claims under 28 U.S.C. § 1332(a)(1) because Plaintiff is a citizen of Georgia and Defendant is a citizen of Michigan, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 as the acts and omissions giving rise to the claims set forth herein occurred in this District.

## THE PARTIES

14.     Plaintiff is a staff sergeant in the United States Army where she has served as a computer technician and instructor for more than 11 years. Plaintiff has been stationed at Fort Gordon in Augusta, Georgia since October 2020. Prior to that time, Plaintiff was stationed outside the United States in Naples, Italy.

15.     Defendant Total Life Changes, LLC, is a Michigan limited liability company with a registered mailing address of 6094 Corporate Drive, Fair Haven, Michigan. Defendant advertises its products throughout the United States through its website, business representatives, and third-party online retailers.

## FACTUAL ALLEGATIONS

*Defendant's Background*

16.     Defendant is a top 100 global direct selling company.[2]

17.     Defendant develops, markets, distributes, and/or sells products including vitamins, weight loss supplements, teas, essential oils, and skin care products.[3] Defendant's products include

---

[2] Total Life Changes, *Become A Member*, https://retail.totallifechanges.com/6925551/enrollment (last visited on April 21, 2021).

[3] Total Life Changes, *About TLC*, https://totallifechanges.com/about-us/ (last visited on April 21, 2021).

those containing derivatives of marijuana, such as hemp extract. Defendant's website discloses that some, but not all, of these products contain THC.

18.     According to Defendant's website, over 3,000,000 people have used their products.[4]

19.     Defendant serves customers worldwide, including customers in the state of Georgia.

20.     Defendant sells products through its retail website and through its business representatives called "Life Changers."[5]

21.     A "Life Changer" sells Defendant's products to new retail customers while earning a fifty-percent retail bonus on each product sold.[6]

22.     Life Changers may achieve various rank levels including: Affiliate, Associate, Apprentice, Director, Rising Star, Executive Director, Regional Director, National Director, Global Director, Ambassador, and Executive Ambassador.

23.     In order to apply to be a Life Changer, one must agree to and execute an agreement with Defendant containing specific terms and conditions.[7]

24.     Defendant generates a monthly report called a "Downline Activity Report" that contains the identities of Life Changers as well as the customers, sales information, and enrollment activity of each Life Changer's marketing organization.[8]

---

[4] Id.
[5] Total Life Changes, *Become A Member*, *supra* at n.2.
[6] Id.
[7] Total Life Changes, *United States Policies and Procedures* (June 18, 2019), https://totallifechanges.com/wp-content/uploads/2019/09/TLC_TC_PP_ENGLISH.pdf.
[8] *See* id. at Sections 6, 15.

25.     Defendant maintains that the Downline Activity Reports and the information contained therein are owned exclusively by TLC.[9]

26.     Defendant's Life Changers act as agents of Defendant.

27.     During the times and places at issue in this complaint, Life Changers were acting (and continue to act) on behalf of Defendant.

**Defendant's Prior Issues with Product Quality**

28.     Defendant received a warning letter from the Federal Trade Commission ("FTC") on or about April 24, 2020, regarding in part social media posts made by Defendant's "business participants or representatives that unlawfully advertise that certain products treat or prevent Coronavirus Disease 2019 (COVID-19)[.]"[10]

29.     Notably, the FTC stated in part:

> **You are responsible for the claims of your business opportunity participants and representatives**. As the FTC stated in the January 2019 Business Guidance Concerning Multi Level Marketing, the compensation structure of a Multi-Level Marketing entity ("MLM") may create incentives for its participants to make certain representations to current or prospective participants. 'As a consequence, an MLM should (i*) direct its participants not to make false, misleading, or unsubstantiated representations and (ii) monitor its participants so they don't make false, misleading, or unsubstantiated representation*s.'[11]

30.     Additionally, in or about May 2020, Defendant was sued by the Environmental Research Center, Inc. ("ERC"), a California non-profit organization.

31.     Specifically, the ERC alleged Defendant exposed consumers to lead in the State of California through certain of Defendant's products in violation of Proposition 65.   *See*

---

[9] Id. at Section 6.1.
[10]    Federal Trade Commission, *Warning Letter to Total Life Changes, LLC*, https://www.ftc.gov/enforcement/warning-letters/warning-letter-total-life-changes-llc (last visited on April 21, 2021).
[11] Id. at 3 (emphasis added).

<u>Environmental Research Centers, Inc. v. Total Life Changes, LLC et al.</u>, No. RG20060596 (California Superior Court, 2020).

32.    Notably, the ERC had previously sued Defendant for alleged violations of Proposition 65 in 2016 for failing to warn consumers of lead in some of Defendant's products. *See* <u>Environmental Research Centers, Inc. v. Total Life Changes, LLC et al.</u>, No. RG16826366 (California Superior Court, 2016).

***Defendant Falsely Advertised that the Tea Does Not Contain THC***

33.    Defendant distributes the Tea. A sample of the product as provided on Defendant's website (as of October 16, 2020) is as follows:



34.    At that time, Defendant sold the Tea for $59.95 per package.

35.    The front of the packaging stated "0.0% THC."

36.    Defendant further provided a "100% Authentic Guaranteed" badge on its website as illustrated below:



37.    Defendant's website description for the Tea provided in part: "This proprietary formula is powered by 100mg of organic Broad Spectrum Hemp Extract with 0% laboratory certified THC content," as shown below:

## Product Description

**Iaso® Tea Instant with Broad-Spectrum Hemp Extract**

Enjoy the detox benefits of the original Iaso® Tea in an all-natural instant formula. This proprietary formula is powered by 100mg of organic Broad Spectrum Hemp Extract with 0% laboratory certified THC content, over 100 phytonutrients, and over 12.5 mg of CBD per serving.**

**Hemp Extract is a naturally-occurring constituent of the industrial hemp plant. Total Life Changes, LLC. does not sell or distribute any products that violate the United States Controlled Substances Act (US.CSA). The company does sell and distribute hemp-based products.

38.    By contrast, Defendant did not make such promises and guarantees as to the THC content of other flavors of its Iaso tea. Indeed, Defendant disclosed that its full-spectrum hemp version of the Iaso tea, unlike the broad-spectrum Raspberry Lemonade Tea, contained 0.3% THC.[12]

39.    Based on Defendant's representations as described herein, it is reasonable for a consumer to believe that the Tea does not contain THC.

40.    Based on Defendant's representations, it is also reasonable for a consumer who does not wish to ingest THC to select the Raspberry Lemonade Tea instead of other versions of the Iaso tea for which THC disclosed detectable levels of THC.

---

[12] Total Life Changes, *Which Iaso Tea Is Best For You?*, (April 15, 2020), https://totallifechanges.com/which-iaso-tea-is-best-for-you/ (last visited June 10, 2021).

41.     Defendant's representations, however, were false. The Tea does contain THC.

***Plaintiff Fails Drug Test After Consuming Defendant's Product***

42.     In early 2020, Plaintiff's friend (whose sister worked as a TLC Life Changer) recommended the Tea to Plaintiff as a weight loss aid.

43.     Knowing that she was subject to drug testing by the Army, prior to purchasing the Tea Plaintiff noted the "0.0% THC" promise on the TLC product webpage for the Raspberry Lemonade Tea. She confirmed with her friend's sister (the Life Changer) that the Tea did not contain THC and would not cause her to fail a drug test.

44.     In April 2020, Plaintiff purchased a bag of the Tea on TLC's website. The front of the package she received stated that it contained "0.0% THC" as shown above. Plaintiff then made two additional purchases of the Tea in May and June 2020. After drinking the Tea regularly for approximately one month, Plaintiff started to consume the Tea intermittently as needed for digestion—for example, after a large meal.

45.     Plaintiff consumed the Tea approximately four or five times from October to December 2020. One of these times was after the Thanksgiving holiday, which took place on November 26, 2020.

46.     On the Monday after Thanksgiving, November 30, 2020, the Army randomly drug tested Plaintiff.

47.     After the holidays, on January 7, 2021, Plaintiff was informed that she had failed the November 30 drug test because she tested positive for THC. The Army notified Plaintiff that she was under investigation and the outcome of the investigation could result in anything from a demotion in rank to separation from the Army via an "other than honorable" discharge.

48.     Shocked by the results of the Army's drug test, Plaintiff paid to have a serving of the Tea tested by a professional lab to determine whether it contained THC despite Defendant's representations. The lab found that the Tea "was likely not made from a hemp variety crop," as Defendant claimed, but was made from "a hybrid crop with equal parts THC and CBD." As such, the lab determined that "[t]he consumption of this product would equal 3.23 mg of delta-9 THC and 1.848 mg of delta-8 THC with each 4.2 g pack" of the Tea, and explained that "both delta-9 and delta-8 THC produce the metabolite THC-COOH, which is the compound drug test use[d] to identify prior use" of products containing THC.

49.     Plaintiff shared these results with the Army and provided the Army with servings of the Tea for its own testing. However, as of the date this lawsuit was filed, Plaintiff is still under investigation by the Army.

50.     While under investigation, Plaintiff has been required to complete a substance abuse program. She has also been prohibited from receiving "favorable actions" including promotions, awards, and benefits such as tuition reimbursement, and has been suspended from performing her work as an instructor while under investigation. Also because of the failed drug test, she is prohibited from possessing a personal firearm or ammunition for one year.

51.     Plaintiff has already suffered concrete injuries as a result of Defendant's misrepresentations. Prior to testing positive for THC, Plaintiff had been notified of her eligibility for a promotion in rank in 2021 that would have provided a higher base salary; however, she is no longer eligible for this promotion due to the failed drug test. Plaintiff had also been taking advantage of the Army's tuition reimbursement program to complete a bachelor's degree that would have aided her career advancement, and she has been prevented from completing the last seven courses needed to finish her degree due to the suspension of her tuition benefits. Further,

Plaintiff's performance evaluations will be impacted by her inability to perform her duties as an instructor while under investigation.

52.     Plaintiff has also suffered reputational and emotional harm due to her absence from work and uncertainty about the future of her military career. Without a formal recall or other notice from Defendant stating that it misrepresented the THC content of its Tea, Plaintiff and other Class Members will continue to suffer such reputational and emotional harm, such as in disclosing drug test results during background screenings and job interviews.

***Defendant Had Notice that the Tea Contained Detectable Levels of THC***

53.     Defendant had notice that the Tea contained THC.

54.     As stated above, Defendant's website stated that the Tea's lack of THC was "laboratory certified," while Defendant stated that another version of its Iaso tea contained 0.3% THC. Defendant's laboratory analysis of the Tea would show that it contained THC.

55.     Further, in May 2020, someone named "Brittany" posted a complaint to the Better Business Bureau ("BBB") website, stating:

> The raspberry lemonade which clearly states 0.0% THC HAS THC in it! which caused me to fail a DOT Drug test and lose my job! This company is disgusting and when you call to speak with someone No one answers nor calls you back![13]

56.     Defendant responded on the BBB website, stating:

> Hello Brittany, We apologize this happened to you. Our Broad-Spectrum Hemp Extract with 0% laboratory certified THC content, over 100 phytonutrients, and over 12.5 mg of CBD per serving. Please review this certificate of analysis for more information: https://totallifechanges.zendesk.com/hc/en-us/articles/360043143074-Iaso-Tea-Instant-with-Broad-Spectrum-Hemp-Extract Thank you[14]

---

[13]     Better Business Bureau, *Total Life Changes, LLC Customer Reviews*, https://www.bbb.org/us/mi/fair-haven/profile/health-and-wellness/total-life-changes-llc-0332-90027281/customer-reviews (last visited February 15, 2021).

[14] *Id.*

57.     Plaintiff's circumstances, while troubling, are far from unique. At least three other class action lawsuits have been filed against Defendant in the last year alleging that the Tea contained THC and caused consumers to fail drug tests. *See Williams v. Total Life Changes, LLC*, No. 0:20-cv-2463, ECF No. 22 (D. Minn., removed Dec. 3, 2020) (alleging plaintiff lost job after drinking Tea and testing positive for THC); *Friday v. Total Life Changes, LLC*, No. 1:21-cv-10231, ECF No. 1 (E.D. Mich. Feb. 1, 2021) (alleging two named plaintiffs lost jobs after drinking Tea and testing positive for THC); *Santiago v. Total Life Changes, LLC*, No. 2:20-cv-18581, ECF No. 1 (D.N.J. Dec. 9, 2020) (alleging parolee tested positive for THC after drinking Tea).

58.     Despite these many complaints providing Defendant with actual knowledge of the falsity of its statements regarding the THC content of the Tea, Defendant continued to advertise and sell the Tea to consumers.

59.     As of the date this lawsuit was filed, Plaintiff is not aware of Defendant issuing any recalls of the Tea or otherwise notifying the consuming public of its misrepresentations.

60.     Defendant's representations that its Tea does not contain THC were false and misleading to Plaintiff and others similarly situated.

61.     Plaintiff and other Class Members suffered damages and injuries as a result of their reliance on advertisements and misrepresentations made by Defendant.

62.     Plaintiff and other Class Members are likely to suffer future harm, including continued reputational damage, in the absence of an injunction against Defendant's misrepresentations.

## CLASS ALLEGATIONS

63.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

64.     Plaintiff seeks to represent the following Class:

> All persons who within the six years prior to the date this Complaint was filed: (1) purchased or consumed Raspberry Lemonade Flavored Iaso Tea Instant from Defendant or Defendant's Life Changers; (2) while residing in Georgia; (3) for personal use and not for resale.

65.     Excluded from the Class is Defendant; any affiliate, parent, or subsidiary of Defendant; any entity in which Defendant has a controlling interest; any officer, director, or employee of Defendant; any successor or assign of Defendant; any individual who worked as a Life Changer for Defendant; any judge to whom this case is assigned and his or her spouse; and members of the judge's staff and their spouses.

66.     This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of Federal Rule of Civil Procedure 23.

67.     Members of the proposed Class are so numerous that joinder is impracticable. Although the precise number of putative Class Members is currently unknown, Defendant sells its product online and through business representatives throughout the country. Plaintiff believes that there are likely hundreds of consumers who have purchased the Tea in Georgia during the statutory period.

68.     There are questions of law and fact common among the putative Class, including:

a.  Whether Defendant made false or misleading representations in the advertising and/or packaging of its Tea;

b.  Whether Defendant knew or should have known that the THC content of the Tea was false;

c.  Whether Defendant deceived Plaintiff and the Class Members, who reasonably relied on them in making their purchase decisions;

12

    d.   Whether Defendant's conduct violates the Georgia Fair Business Practices Act;

    e.   Whether Defendant's conduct constitutes breach of express warranty;

    f.   Whether Defendant's conduct constitutes fraudulent concealment;

    g.   The proper equitable and injunctive relief;

    h.   The proper amount of actual or compensatory damages;

    i.   The proper amount of restitution or disgorgement;

    j.   The proper amount of punitive damages, and;

    k.   The proper amount of reasonable attorneys' fees and costs.

69.    Plaintiff's claims are typical of those of the putative Class. Plaintiff and Class Members have suffered injuries-in-fact and have lost money as a result of Defendant's false representations. Indeed, Plaintiff purchased the Tea under the belief that it did not contain THC. Plaintiff relied on Defendant's statements, packaging, labeling, and marketing and would not have purchased the product if she had known it did in fact contain THC.

70.    Plaintiff will fairly and adequately protect the interests of the Class Members. Plaintiff is committed to the prosecution of this action and has retained counsel that numerous courts have found sufficiently experienced in class actions to be appointed as class counsel. There are no conflicts between Plaintiff and the Class Members she seeks to represent.

71.    This action is maintainable as a class action under Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class Members, thus making injunctive relief and corresponding declaratory relief appropriate with respect to the Class as a whole.

72.    This action is also maintainable as a class action under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the putative Class Members predominate over any questions affecting only individual members of the Class Members and because a class action is

superior to other methods for the fair and efficient adjudication of this action. Though each Class Members Member's injury is meaningful on an individual basis, those injuries are not of such magnitude as to make the prosecution of individual actions economically feasible. Further, this class action will not present unreasonable manageability difficulties.

73.     Plaintiff intends to request to send notice to all members of the Class Members to the extent required by Fed. R. Civ. P. 23(c)(2). The names and addresses of the Class Members are readily available from Defendant's business records.

## CAUSES OF ACTION

## COUNT I

### GEORGIA FAIR BUSINESS PRACTICES ACT
### O.C.G.A. § 10-1-392 *et seq.*
(On behalf of Plaintiff and all Class Members)

74.     Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

75.     Defendant TLC is a "person" as defined by the Georgia Fair Business Practices Act ("Georgia FBPA"). O.C.G.A. § 10-1-392(a)(24).

76.     Plaintiff and Class Members are "consumers" within the meaning of the Georgia FBPA. O.C.G.A. § 10-1-392(a)(6).

77.     The purchase of the Tea constituted "consumer transactions" as defined by the Georgia FBPA. O.C.G.A. § 10-1-392(a)(10).

78.     The Georgia FBPA declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful, O.C.G.A. § 10-1-393(a), including but not limited to "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, or benefits that they do not have,"

"[r]epresenting that goods or services are of a particular standard, quality, or grade … if they are of another," and "[a]dvertising goods or services with intent not to sell them as advertised," *id.* §§ 10-1-393(b)(5), (7) & (9).

79.    By representing to consumers that the Tea contained "0.0% THC" when it in fact contains THC, Defendant represented that the Tea had characteristics and benefits that it does not have, and represented that the Tea was of a particular standard, quality, or grade when it was of another. *See* O.C.G.A. §§ 10-1-393(b)(5) & (7).

80.    Defendant advertised the Tea with the intent not to sell it as advertised, in violation of O.C.G.A. § 10-1-393(b)(9).

81.    Defendant's unfair and deceptive acts or practices occurred repeatedly, were material, were capable of deceiving a substantial portion of the purchasing public, and as a result, caused economic harm to owners and purchasers of the Tea.

82.    Defendant knew that the Tea contained THC and therefore was not in accordance with its advertising. Defendant stated that the Tea's 0.0% THC content was "laboratory certified," while its other version of the Iaso tea contained precisely 0.3% THC. Defendant's laboratory analysis of the Tea would reveal that the Tea, in fact, contains THC.

83.    Defendant had exclusive knowledge of material facts concerning the existence of THC in the Tea.

84.    Defendant not only misrepresented the THC content of the Tea, but actively concealed this fact from consumers by denying the existence of THC in the Tea and failing to issue a product recall or other notice to remedy the defect in its product.

85.     Defendant was under a duty to Plaintiff and Class Members to disclose its misrepresentation because of its superior position to know the true contents of its product, which it contends were "lab certified" and "100% authentic guaranteed."

86.     Plaintiff and Class Members expected Defendant to represent its product truthfully and could not reasonably have been expected to learn or discover that the Tea contained THC until after they suffered an injury therefrom.

87.     Defendant knew that Plaintiff and Class Members could not reasonably be expected to learn or discover its misrepresentations until after they suffered an injury therefrom.

88.     Defendant knew or should have known that its conduct violated consumer protection laws including the Georgia FBPA.

89.     Defendant's misrepresentations are material in that a reasonable consumer would have considered the existence THC to be important in deciding whether to purchase the Tea, which was marketed as containing 0.0% THC, in comparison to a version of the Tea containing THC. Had Plaintiff and Class Members known that the Tea contained THC, they would not have purchased it.

90.     As a result of Defendant's misrepresentations, Plaintiff and Class Members have been harmed and suffered actual damages including loss of the purchase price of the Tea in addition to adverse employment consequences, health consequences, emotional distress, reputational harm, and other injuries caused by the ingestion of an illegal psychoactive substance.

91.     Defendant has not acknowledged or remedied its misrepresentations through a recall or other notice to consumers. As such, its violations present a continuing risk to Plaintiff and to the general public. Defendant's unlawful actions affect the public interest.

92.     Plaintiff and Class Members are entitled to equitable relief.

16

93.     Defendant received proper notice of its alleged violations of the Georgia FBPA pursuant to O.C.G.A. § 10-1-399(b), via a letter sent to Defendant's attorneys on March 5, 2021. The notice letter is attached hereto as Exhibit A.

94.     Pursuant to O.C.G.A. § 10-1-399, Plaintiff seeks, in addition to equitable relief, actual and statutory damages, attorneys' fees and expenses, treble damages, and punitive damages as permitted under the Georgia FBPA and applicable law.

## COUNT II

### FRAUDULENT CONCEALMENT
### O.C.G.A. § 51-6-2
(On behalf of Plaintiff and all Class Members)

95.     Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

96.     Defendant concealed and suppressed material facts concerning the contents of the Tea.

97.     Upon information and belief, the Tea contains THC despite Defendant's representations that the Tea contains "0.0% THC."

98.     Defendant knew that the Tea contained THC and therefore was not in accordance with its advertising. Defendant stated that the Tea's 0.0% THC content was "laboratory certified," while its other version of the Iaso tea contained precisely 0.3% THC. Defendant's laboratory analysis of the Tea would reveal that the Tea, in fact, contains THC.

99.     Defendant knew that Plaintiff and Class Members would not be able to inspect or otherwise detect the presence of THC prior to purchasing or consuming the Tea.

100.    Defendant not only misrepresented the THC content of the Tea, but actively concealed this fact from consumers by denying the existence of THC in the Tea and failing to issue a product recall or other notice to remedy the defect in its product.

101.    These false representations and omissions were material to consumers. A reasonable consumer would have considered the existence THC to be important in deciding whether to purchase the Tea, which was marketed as containing 0.0% THC, in comparison to a version of the Tea containing THC. Had Plaintiff and Class Members known that the Tea contained THC, they would not have purchased it.

102.    Defendant had a duty to disclose the existence of THC in the Tea because the contents of the Tea were known and/or accessible only to Defendant; Defendant had superior knowledge and access to the facts; and Defendant knew the facts were not known to, or reasonably discoverable by, Plaintiff and Class Members. Defendant also had a duty to disclose because it made many affirmative representations about the lack of THC in the Tea, which were misleading, deceptive, and/or incomplete without the disclosure of the additional facts set forth above regarding the actual contents of the Tea.

103.    Defendant actively concealed and/or suppressed these material facts, in whole or in part, to protect its reputation, sustain its marketing strategy, avoid recalls that would hurt the brand's image and cost money, and encourage additional purchases of the Tea, and it did so at the expense of Plaintiff and Class Members.

104.    On information and belief, Defendant has still not made full and adequate disclosure and continues to defraud Plaintiff and Class Members and conceal material information regarding the contents of the Tea.

105.    Plaintiff and Class Members were unaware of these omitted material facts and relied upon these omissions in purchasing the Tea; they would not have purchased or consumed the Tea had they known of the concealed facts.

106.    Plaintiff and Class Members' actions were justified. Defendant was in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or Class Members. Indeed, when Plaintiff attempted to investigate Defendant's claim that the Tea did not contain THC by asking one of Defendant's business representatives, the representative confirmed that the Tea did not contain THC. Consumers cannot be expected to have every beverage they purchase tested by a professional lab to ascertain its contents prior to consumption.

107.    Because of the concealment and/or suppression of the facts, Plaintiff and Class Members sustained damage because they paid value for the Tea under the assumption that it contained no THC and suffered damages as a result of consuming the Tea. Accordingly, Defendant is liable to Plaintiff and Class Members for damages in an amount to be proven at trial.

108.    This is not the first notice Defendant has received of its misrepresentations. Defendant stated that it performed laboratory analyses on the Tea and that the THC content of the Tea was "laboratory certified" and "100% authentic guaranteed." Further, Defendant has received complaints reporting that the Tea contained THC and was causing consumers to fail drug tests and lose their jobs. Defendant's continued misrepresentations and failure to issue a recall were therefore done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff and Class Members' rights and well-being to enrich Defendant.

109.    Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT III

### BREACH OF EXPRESS WARRANTY
### O.C.G.A. § 11-2-313(1)
(On behalf of Plaintiff and all Class Members)

110.    Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

111.    Defendant utilized its website, marketing materials and business representatives to promote, encourage, and urge the use and purchase of the Tea, representing to Plaintiff, the Class Members, and the public that the Tea contained 0.0% THC, that the THC content was "laboratory certified" and "100% authentic guaranteed," and, therefore, that the Tea would not cause a failed drug test. These representations were contrasted by Defendant's representations that other versions of the Iaso tea contained 0.3% THC. Defendant's representations collectively induced the purchase or use of the Tea, thereby making an express warranty that the Tea would conform to the representations.

112.    Defendant not only misrepresented the THC content of the Tea, but actively concealed this fact from consumers by denying the existence of THC in the Tea and failing to issue a product recall or other notice to remedy the defect in its product.

113.    The representations, as set forth above, contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

114.    The Tea did not conform to the representations that Defendant made to Plaintiff and Class Members, as the Tea did contain detectible levels of THC.

20

115.    At all relevant times, Plaintiff used the Tea for the purpose and in the manner intended by Defendant.

116.    Plaintiff and Class Members could not, by the use of reasonable care, have discovered the breached warranty and realized the Tea's hidden increased risks and its unreasonable dangers.

117.    The breach of the warranty was a substantial factor in bringing about Plaintiff's injuries, and other Class Members are likely to have suffered similar injuries from Defendant's misrepresentation.

118.    Defendant intended to induce Plaintiff and Class Members to rely on its misrepresentations to purchase and consume the Tea.

119.    In reliance upon Defendant's representations, Plaintiff and Class Members purchased and consumed the Tea.

120.    Plaintiff and Class Members were justified in their reliance on Defendant's representations and marketing, particularly considering Defendant bolstered their promise that the Tea did not contain THC with the representations that this was "lab certified" and "100% authentic guaranteed." Indeed, when Plaintiff attempted to investigate Defendant's claim that the Tea did not contain THC by asking one of Defendant's business representatives, the representative confirmed that the Tea did not contain THC. Consumers cannot be expected to have every beverage they purchase tested by a professional lab to ascertain its contents prior to consumption.

121.    Had Plaintiff and Class Members been made fully and adequately aware that the Tea contained THC, they would not have chosen to purchase or consume the Tea.

122.    As a direct and proximate result of said misrepresentations, Plaintiff and likely other Class members have been injured and incurred damages, including but not limited to lost promotion opportunities, lost employment benefits, emotional distress, and reputational harm.

## COUNT IV

### UNJUST ENRICHMENT
(On behalf of Plaintiff and all Class Members)

123.    Plaintiff incorporates by reference each allegation set forth in the preceding paragraphs.

124.    Defendant has been unjustly enriched by the Plaintiff and Class Members through their purchase of Tea from Defendant that Plaintiff and Class Members would not have purchased but for Defendant's misrepresentation and concealment of the THC content of the Tea.

125.    By purchasing the Tea in reliance on Defendant's misrepresentations, Plaintiff and Class Members unknowingly conferred a benefit on Defendant of which Defendant had knowledge.

126.    Defendant profited from the misrepresentation of the THC content of its Tea and continues to profit from the concealment of the falsity of its marketing.

127.    The circumstances are such that it would be inequitable, unconscionable, and unjust to permit Defendant to retain the benefit of revenue that it unfairly obtained from Plaintiff and Class Members.

## JURY DEMAND

128.    Plaintiff and the Class Members request a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff, individually and on behalf of the Class Members, pray for the following relief:

A.  Certification of the Class Members pursuant to Rule of Civil Procedure 23;

B.  Appointment of Plaintiff as Class Representative for the Class;

C.  Appointment of Plaintiff's counsel as Class Counsel;

D.  A declaration that Defendant violated each of the laws that form the basis of relief;

E.  Monetary damages as provided by law;

F.  Compensatory damages as provided by law;

G.  Restitution as provided by law;

H.  Penalties as provided by law;

I.  A permanent injunction enjoining Defendant from continuing the unlawful, unjust, unfair, and deceptive acts and practices described herein;

J.  Pre-judgment and post-judgment interest;

K.  Leave to amend the pleadings to add a claim for punitive damages;

L.  Reasonable attorneys' fees and expenses; and

M.  Such other further relief that the Court deems just and equitable.

Dated: June 15, 2021

/s/ *John F. Beasley, Jr.*
**JF BEASLEY, LLC**
John F. Beasley, Ga. Bar No. 045010
31 N Main Street
Watkinsville, GA 30677
(706) 769-4410
jfbeasley@jfbeasleylaw.com

**NICHOLS KASTER, PLLP**
Matthew H. Morgan*
Anna P. Prakash*

23

Chloe Raimey*
4700 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Tel.: 612.256.3200
Fax: 612.338.4878
morgan@nka.com
aprakash@nka.com
craimey@nka.com

**THE FISH LAW FIRM, P.C.**
David Fish**
200 E. 5th Avenue, Suite 123
Naperville, IL 60563
(630) 355-7590 Direct
(630) 778-0400 Facsimile
dfish@fishlawfirm.com

**RAPIER LAW FIRM**
Aaron Rapier**
1770 Park St., Suite 200
Naperville, IL 60563
T: (815) 782-5478
F: (815) 327-3449
arapier@rapierlawfirm.com

*Pro hac applications pending*
**Pro hac applications forthcoming*

ATTORNEYS FOR PLAINTIFF

# Exhibit A



**Matthew H. Morgan**    4700 IDS Center
Direct: (612) 256-3243    80 South Eighth Street
Fax: (612) 338-4878    Minneapolis, MN 55402
morgan@nka.com    (877) 448-0492

March 5, 2021

<u>**VIA EMAIL ONLY**</u>

Lauri Mazzuchetti
Kelley Drye & Warren LLP
One Jefferson Road
Parsippany, NJ 07054
lmazzuchetti@kelleydrye.com

RE:    *Miller v. Total Life Changes, LLC*

Dear Lauri:

This letter provides my client Ashley Miller's demand for relief from your client, Total Life Changes, LLC, as required under Ga. Code Ann. § 10-1-399(b).

Ga. Code Ann. § 10-1-399(b) states:

> At least 30 days prior to the filing of [an action alleging consumer acts or practices in violation of the Georgia Fair Business Practices Act, including Ga. Code. Ann. § 10-1-393], a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be delivered to any prospective respondent.

Ms. Miller claims damages arising from her reliance on TLC's fraudulent misrepresentations—via TLC's website, marketing materials, packaging, and sales associates—that its Raspberry Lemonade Iaso Tea Instant ("Tea") contains 0% THC, the psychoactive ingredient in cannabis. Ms. Miller failed a drug test conducted by her employer after consuming the Tea, and has suffered actual and consequential damages including loss of a promotion, missed career development and education opportunities, potential demotion or loss of employment, out-of-pocket expenses, emotional distress, and reputational harm.

Unless TLC indicates its desire to engage in good faith settlement discussions within the next 30 days, Ms. Miller intends to file an action in the U.S. District Court for the Southern District of Georgia under the Georgia Fair Business Practices Act of 1975 ("GFBPA"), O.C.G.A. § 10-1-392, 393; the Georgia Uniform Deceptive Trade Practices Act ("GUDTPA"), Ga. Code Ann. § 10-1-370 *et seq.*; Fraudulent Concealment, O.C.G.A. § 51-6-2; and Breach of Express Warranty, O.C.G.A. § 11-2-313(1).

I have provided a separate settlement demand letter providing further details regarding Ms. Miller's claims in an effort to facilitate constructive settlement negotiations.

Sincerely,

**NICHOLS KASTER, PLLP**

Matthew H. Morgan